CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 3 1 2007

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KEVIN D. GRAHAM, ) | |
|    Plaintiff, ) | Civil Action No. 7:07cv00381 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| GERALD K. WASHINGTON, et al., ) | By: Samuel G. Wilson |
|    Defendants. ) | United States District Judge |

Plaintiff Kevin D. Graham, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Graham alleges several claims stemming from a disciplinary charge in which Graham was charged with sexually assaulting his cellmate. As relief, Graham seeks $10,000 in damages and injunctive relief in the form of expungement of the sexual assault infraction from his record. The court finds that Graham's allegations fail to state a claim upon which the court may grant relief and, therefore, dismisses his action, pursuant to 28 U.S.C. § 1915A(b)(1).

### I.

On May 25, 2005, Graham allegedly committed an act of forcible sodomy upon his cellmate at Buckingham Correctional Center ("Buckingham"). Graham claims that on May 27, 2005, he was removed from the general population and placed in the segregated housing unit ("SHU"), pending an investigation of the incident. On that same day, Investigator Lt. Le'Sueur read him his rights and interviewed him regarding the incident. Graham claims that he denied the allegation at that time and was asked to take a polygraph test. It is unclear whether a polygraph test was ever administered. On June 10, 2005, Graham alleges that Agent Harper of Internal Affairs summonsed him to be interviewed again. Agent Harper read Graham his rights and questioned him regarding the incident. Graham alleges that Agent Harper claimed that thirteen witnesses could attest to the incident and that Graham's cellmate had been examined by a doctor outside the institution who determined that the

cellmate had anal fissures. Graham claims that Agent Harper told him that if he confessed that it was a consensual act, Harper would be able to resolve the matter institutionally.

Prior to his disciplinary hearing regarding the incident, Graham alleges that on June 21, 2005, he requested a "documentary evidence form in hope of ascertaining the so-called physical evidence that the investigator/internal affairs said corroborated the allegation." Graham's disciplinary hearing was held on June 28, 2005. Throughout the hearing, Graham claims that he "denied the allegation" and "mention[ed]" that his cellmate's anal fissures may have been self-inflicted. Graham also claims that he argued that his cellmate did not report the incident on the night that it allegedly happened, and that, in his statement to investigators, the cellmate said that "after [Graham] ejaculated in [his] rectum [] he sat on the toilet and discarded the physical evidence [and] then took a shower." Graham also argues that although his cellmate told administration that Graham had sexually assaulted him in the past, the cellmate never mentioned these alleged attacks to his parents during visits or phone calls. At the conclusion of his disciplinary hearing, Graham states that the Institutional Hearing Officer ("IHO") told him that she had "no choice but to find [him] guilty as charged 'due to [his] failure to challenge the evidence presented by the investigators.'" During the penalty phase, the IHO penalized Graham with 30 days in SHU, with credit given for 30 days time served; 90 days loss of good-time credit; and assignment to a security level classification of 3-5. Graham claims that Chief Warden G. K. Washington, IHO J. Harmon, Investigator Lt. Le'Sueur, and Internal Affairs Agent L. Harper suppressed evidence that would have proved Graham's innocence, deliberately denied him access to "critical physical evidence," and misrepresented the medical evidence during this hearing. Graham alleges that these defendants colluded to convict him at the hearing even though they were aware that the medical report exonerated him. He further claims that these defendants "concoct[ed]

or manufacture[d] a conviction" by fabricating the medical report.

On July 1, 2005, Graham was transferred to Sussex I State Prison ("Sussex I") and placed in the SHU upon his arrival "without new cause," and he remained in SHU until October 15, 2005. Graham claims that he submitted an appeal of his disciplinary hearing conviction at Buckingham on July 6, 2005, but contends that Warden Washington failed to respond until September 21, 2005. Graham complains that prison policy states that a response is due within fifteen days; therefore, Washington's response upholding the conviction was untimely. He states that Washington's office claims that they lost his appeal package.

Graham also claims that he filed grievances regarding his placement in SHU upon his arrival at Sussex I, arguing that he had already "completed [his] seg[regation] time. In October 2005, Graham initiated a three day hunger strike. Graham claims that he was released from segregation on October 15, 2005, after his family notified the Attorney General's Office of his hunger strike. Graham contends that he was subjected to cruel and unusual living conditions as a result of his extended stay in segregation.

Thereafter, Agent Harper prepared and submitted his report to the Inspector General's Office. The report was approved and signed by R.K. Dent and N.K. Broughton on November 15, 2005, and by June Kimbriel on November 17, 2005, to be forwarded to the Buckingham County Commonwealth Attorney. Graham alleges these defendants showed "deliberate indifference to his due process rights" by failing to "dismiss the report," expunge his infraction, and restore his good-time credits. He alleges that they "conveniently overlooked" the medical report which indicated that there were no physical signs of a sexual assault and that the anal fissures that Graham's cellmate suffered were a direct result of constipation. Graham alleges that Warden Washington, IHO

3

Case 7:07-cv-00381-SGW-mfu   Document 9   Filed 12/31/07   Page 3 of 9   Pageid#: 39

Harmon, Lt. Le'Sueur, and Agent Harper manipulated the alleged victim and the medical report in order to pursue a criminal indictment. Graham specifically contends that Harper prepared the "prejudicial report" and that he participated in "ex parte communication between himself and his constituents." In January 2006, Graham was indicted in Buckingham County, Virginia, for committing forcible sodomy in violation of Virginia Code § 18.2-67.1. Although Graham claims that the indictment was later dismissed on October 18, 2006, the records which he provided to the court indicate that an order of nolle prosequi, not dismissal, was entered.

On November 21, 2006, Graham sent a letter to then-acting Warden of Buckingham, H. Diggs, Jr., asking that the charge be expunged from his record and his good-time credits be restored. Warden Diggs denied his request stating that the IHO found him guilty and the finding of guilt was upheld throughout the appeal process. Diggs also advised Graham that the nolle prosequi of the criminal charge had no impact on the institutional disciplinary process.

## II.

Graham appears to allege that he was denied due process at the June 28, 2005 disciplinary hearing when the defendants "suppressed" and "manipulated" evidence at the hearing. However, Graham's claim for damages as to this issue is not cognizable under § 1983. If a prisoner's challenge to disciplinary hearing procedures would necessarily imply the invalidity of his conviction if successful, any cause of action under § 1983 for monetary damages against individuals involved in that conviction does not accrue until the prisoner shows that the conviction has been otherwise overturned. See Edwards v. Balisok, 520 U.S. 641, 646-47 (1997) (citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)). Graham's § 1983 action falls squarely within the ambit of Heck and Edwards. Under the principles established by Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974),

4

if Graham could prove his allegations that the evidence was manipulated and fabricated, such proof would necessarily invalidate the disciplinary conviction. See Pierce v. Freeman, 121 F.3d 699 (Table), 1997 WL 467533 (4th Cir. Aug. 15, 1997) (unpublished); see also Reed v. Smith, 182 F.3d 933 (Table), 1999 WL 345492 (10th Cir. 1999) (allegations that the defendant prison officials conspired to present false evidence at the disciplinary hearing necessarily implied that the result of the hearing, the loss of good time credits and the imposition of disciplinary segregation, was invalid); Goodman v. Gilmore, No. 7:06cv00342, 2006 WL 1587463 at *1-2 (W.D. Va. June 8, 2006) (where officer falsified evidence and denied inmate access to witnesses and other evidence, such proof would invalidate the disciplinary conviction). Accordingly, as Graham offers no indication that the disciplinary conviction has already been invalidated or expunged, his claims for damages against the defendants under § 1983 have not yet accrued, and thus, must be dismissed.[1] To the extent Graham seeks restoration of his good time credits in federal court, he may only do so by way of writ of habeas corpus, after he has exhausted his state court remedies. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Therefore, the court finds that Graham's claim seeking restoration of his good-time credits is not properly challenged in a § 1983 action and, therefore, is dismissed without prejudice.[2]

### III.

Graham further complains that he was incarcerated in the SHU for approximately four and half months. To the extent that Graham alleges that his initial placement in segregation violated his

---

[1] Graham's claims of wrongful or malicious prosecution must also be dismissed for this reason. See Blackmon v. Perez, 791 F. Supp. 1086, 1091 (E.D. Va. 1992) (citing Morrison v. Jones, 551 F.2d 939, 940-41 (4th Cir. 1977)) (finding that a malicious prosecution claim under section 1983 does not accrue until the underlying criminal proceedings have been terminated in a manner favorable to the plaintiff).

[2] Furthermore, to the extent that Graham is challenging his security level classification reduction or his transfer to Sussex I, the court notes that prisoners generally do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976).

5

Case 7:07-cv-00381-SGW-mfu   Document 9   Filed 12/31/07   Page 5 of 9   Pageid#: 41

due process rights afforded under the Fourteenth Amendment, this argument fails. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); see also Beverati, 120 F.3d at 502 (holding that a six-month term in segregation did not impose an atypical hardship where the inmates alleged that their cells were infested with vermin and smeared with urine; that no outside recreation was permitted; that there were no religious services available; and that food was served in considerably smaller portions). Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976). However, in Wilkinson v. Austin, 545 U.S. 209 (2005), the Court found that inmates did have a liberty interest in avoiding assignment to a state's supermax prison. In reaching this conclusion, the Court carefully distinguished the supermax facilities from normal segregation units on three grounds. First, inmates in the supermax facility were "deprived of almost any environmental or sensory stimuli and of almost all human contact."

Wilkinson, 545 U.S. at 214. Second, they were assigned for "an indefinite period of time, limited only by [the] inmate's sentence." Id. Third, once assigned to supermax "[i]nmates otherwise eligible for parole lose their eligibility while incarcerated" at the facility. Id. at 215. After noting other onerous conditions of confinement, including that the cells were lighted 24 hours per day, the court stated: "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224. In this case, while the conditions of Graham's placement in the SHU at Buckingham from May 27, 2005 to July 1, 2005, and at Sussex I from July 1, 2005 to October 15, 2005, may have been more restrictive than those applied to inmates in the general population, Graham has not alleged that they were nearly so restrictive and atypical as those at issue in Wilkinson. Therefore, the court finds that Graham did not have a liberty interest in remaining out of the SHU and, thus, his due process claim fails.

## IV.

Graham further contends that his placement in segregation was cruel and unusual punishment in violation of the Eighth Amendment. Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471-72 (4th Cir. 1999) (long-term placement in segregation or maximum custody is not cruel and unusual punishment). Therefore, in order to state a claim of constitutional significance regarding

7

Case 7:07-cv-00381-SGW-mfu   Document 9   Filed 12/31/07   Page 7 of 9   Pageid#: 43

prison conditions, a plaintiff must allege that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). In addition, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993).

While being confined in segregation may be restrictive and inconvenient, Graham does not allege that his living conditions violated contemporary standards of decency, that any of the defendants were deliberately indifferent to those conditions, or that he suffered a serious mental or physical injury as a result of his confinement in segregation. Further, there is no indication that the conditions posed an unreasonable risk of serious harm. Accordingly, the court finds that Graham has also failed to state a claim under the Eighth Amendment.

V.

To the extent Graham complains that Warden Washington violated his constitutional rights by not promptly responding to his grievance, it also fails. Inasmuch as a state grievance procedure does not confer any substantive right upon prison inmates, a prison employee's failure to comply with the state's grievance procedure is not actionable under § 1983. Adams v. Rice, 40 F.2d 72 (4th Cir. 1994). Accordingly, any delay in a response to grievances or to properly process complaints does not raise a claim of constitutional magnitude. Therefore, the court finds that Graham has failed to state a cognizable constitutional claim.

VI.

Finally, to the extent Graham alleges that the defendants retaliated against him by

8

"fabricating" the report that was sent to the Buckingham Commonwealth Attorney, it also fails. It is well-settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. See American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. White v. White, 886 F.2d 271 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism"). In this case, Graham does not point to any facts that suggest that the defendants' preparation and approval of the report or the resultant forwarding of the report to Buckingham Commonwealth Attorney was based on a retaliatory motive. Accordingly, the court finds that Graham's conclusory allegations of retaliation fail to state a claim on which relief may be granted under § 1983.

## VII.

For the reasons stated, the court finds that Graham has not presented any claims on which relief can be granted, and therefore, dismisses Graham's complaint, pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to plaintiff.

ENTER: This 31st day of December, 2007.

United States District Judge